IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| The Bluffs at Glade Path, L.P., | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| Center Township Sanitary Authority | : | |
| | : | |
| | : | |
| The Bluffs at Glade Path, L.P., | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 908 C.D. 2023 |
| Center Township Water Authority | : | Argued: November 6, 2025 |

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE STACY WALLACE, Judge
HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY JUDGE WALLACE                                            FILED: January 7, 2026

The Bluffs at Glade Path, L.P. (Developer) appeals from the July 19, 2023 final order of the Court of Common Pleas of Beaver County (trial court), which, following a bench trial, denied Developer's remaining claims against the Center Township Sanitary Authority (the Sanitary Authority) and the Center Township Water Authority (the Water Authority) (collectively, the Authorities) related to Developer's development project in Center Township, Beaver County (the Project).

In its appeal, Developer solely challenges the trial court's November 9, 2021 order,[1] to the extent the trial court denied Developer's motions for summary judgment and granted the Sanitary Authority's motion for summary judgment regarding reimbursements for tapping fees the Authorities received from new customer connections within the Project. Upon careful review, we affirm.

## I. Background

The parties dispute the Authorities' right to collect and retain "tapping fees," which residential and commercial owners of properties within the Project paid when they connected to the Authorities' water and sewer systems.

### a. Statutory Framework

To properly understand Developer's claims, we begin with a brief background of the law governing "tapping fees." Section 507-A(a) of the Pennsylvania Municipalities Planning Code (MPC)[2] provides "[n]o municipality may charge any tap-in connection or other similar fee as a condition of connection to a municipally owned sewer or water system unless such fee is calculated as provided in the applicable provisions of the . . . Municipality Authorities Act [(the Act)[3]]." 53 P.S. § 10507-A(a). The Act permits an authority to charge certain fees to property owners who wish to connect to the authority's water distribution or sewer collection systems "if they are separately set forth in a resolution adopted by the authority." *See* 53 Pa.C.S. § 5607(d)(24)(i). Those fees include a "connection fee," a "customer facilities fee," and a "tapping fee." *Id.*

---

[1] By memorandum opinion and order filed in this matter on January 24, 2025, this Court concluded "Developer properly filed a notice of appeal from the trial court's July 19, 2023 final order, even though Developer was only seeking review of the trial court's November 9, 2021 order granting partial summary judgment." *See The Bluffs at Glade Path, L.P., v. Ctr. Twp. Sanitary Auth.* (Pa. Cmwlth., No. 908 C.D. 2023, filed January 24, 2025), slip op. at 6.

[2] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

[3] 53 Pa.C.S. §§ 5601-5623.

The connection fee "shall not exceed an amount based upon the actual cost of the connection of the property extending from the authority's main to the property line or curb stop of the property connected." 53 Pa.C.S. § 5607(d)(24)(i)(A). This fee can be calculated using "an average cost for previously installed connections of similar type and size." *Id.* Similarly, the customer facilities fee "shall not exceed an amount based upon the actual cost of facilities serving the connected property from the property line or curb stop to the proposed dwelling to be served." 53 Pa.C.S. § 5607(d)(24)(i)(B). This fee "shall be chargeable only if the authority installs the customer facilities." *Id.* In addition, "[i]n lieu of payment of the customer facilities fee, an authority may require the construction of those facilities by the property owner who requests customer facilities." *Id.*

Regarding tapping fees, the Act begins by establishing that "[t]apping fees shall not include costs included in the calculation of any other fees, assessments, rates or other charges imposed under this act." 53 Pa.C.S. § 5607(d)(24). Relevantly here, the Act establishes the "tapping fee shall not exceed an amount based upon some or all of the following parts, which shall be set forth in the resolution adopted by the authority to establish these fees." 53 Pa.C.S. § 5607(d)(24)(i)(C). Similar to the customer facilities fee, the Act provides that "[i]n lieu of payment of this fee, an authority may require the construction and dedication of only such capacity, distribution-collection or special purpose facilities necessary to supply service to the property owner or owners." *Id.*

The four parts of the tapping fee are the "capacity part," "distribution or collection part," "special purpose part," and "reimbursement part." *Id.* Relevantly here, the "capacity part shall not exceed an amount that is based upon the cost of capacity-related facilities, including, but not limited to, source of supply, treatment,

3

pumping, transmission, trunk, interceptor and outfall mains, storage, sludge treatment or disposal, interconnection of other general system facilities." 53 Pa.C.S. § 5607(d)(24)(i)(C)(I). Generally, "such facilities may include only those that provide existing service." *Id.* The distribution or collection part[4] "may not exceed an amount based upon the cost of distribution or collection facilities required to provide service, such as mains, hydrants and pumping stations." 53 Pa.C.S. § 5607(d)(24)(i)(C)(II). Again, the "[f]acilities may only include those that provide existing service." *Id.*

The reimbursement part "shall only be applicable to the users of certain specific facilities when a fee required to be collected from such users will be reimbursed to the person at whose expense the facilities were constructed as set forth in a written agreement between the authority and such person at whose expense such facilities were constructed." 53 Pa.C.S. § 5607(d)(24)(i)(C)(IV).

Pursuant to the Act, the Authorities have adopted resolutions which set forth their charges for connecting to their distribution and collection systems. The Sanitary Authority's resolution lists its "Tapping Fee" as "$3,950 / EDU[5] (Collection $2,900 / Capacity $1,050)." R.R. at 67a. The Water Authority's resolution lists its "Tapping Fee (per EDU)" as being $600.00 for the capacity component, $900.00 for the distribution component, and $0.00 for the future facilities, reimbursement, and special purpose components. *Id.* at 107a. Nevertheless, the Water Authority's resolution specifies:

---

[4]   In the case of water service, it is a distribution part, as water is distributed to customers. In the case of sewer service, it is a collection part, as sewage is collected from customers.
[5]   "EDU" is an abbreviation for "Equivalent Dwelling Unit," which is used as a projection of the amount a new customer will consume or convey through an authority's system. *See* R.R. at 95a-96a.

4

d). **The Reimbursement Component of the Tapping Fee.**

> (1) Where a property owner or developer constructs or pays for the construction of a water line extension, the Authority shall provide for reimbursement to the property owner **when subsequent service lines are directly connected [to] the extension** within ten years of dedication.
>
>> A. Reimbursement shall be equal to the distribution part of each tapping fee collected **as a result of subsequent connections**. The Authority shall deduct 5% as an administrative charge.
>>
>> B. **A reimbursement agreement is required** to specify all water facilities for which reimbursement shall be provided.

*Id.* at 93a (emphasis added). While Developer entered into Developer's Agreements with the Authorities, Developer did not have a reimbursement agreement with the Sanitary Authority or the Water Authority, nor did its Developer's Agreements specify any reimbursement.

**b.    Parties' Claims**

The trial court's November 9, 2021 memorandum opinion succinctly summarizes the parties' dispute over tapping fees:

> [Developer] first initiated this action through the filing of a Complaint in Mandamus for declaratory relief and for damages against [the Sanitary Authority] in September, 2019. In that Complaint, [Developer] asserts . . . it constructed the sewer system [in the Project] at its own expense and that it is entitled to reimbursement for the tapping fees for the sanitary sewer system under both the [Act] and the Developer's Agreement. Specifically, [Developer] alleges that the [the Sanitary Authority] did not comply with the provisions of the [Act] concerning notification, publication, manner of determination and amount of tapping fees charged, thereby entitling [Developer] to reimbursement of the tapping fees, or, in the alternative, that the [Sanitary Authority] has charged tapping fees in excess of that allowed to be collected under the [Act], thereby entitling [Developer] to reimbursement of 95% of the excess amount charged. Based upon

these claims and contentions, [Developer] asserts claims for reimbursement of tapping fees in Count I [of the Complaint] . . . .

In its Answer and New Matter, [the Sanitary Authority] denies that [Developer] is entitled to any reimbursement, specifically asserting that [Developer] is not entitled to any reimbursement under the rules and regulations of the [the Sanitary Authority], the [Act], or the [Developer's A]greement. [The Sanitary Authority] asserts that the tapping fee contains no reimbursement provision, specifically stating that the tapping fee contains only a capacity part and a collection part. Because [Developer] is not entitled to any reimbursement according to [the Sanitary Authority], the Answer asserts that [Developer] is/was not entitled to statutory notice.

. . . .

Plaintiff filed a second Complaint in Mandamus and for declaratory relief and damages against [the Water Authority] in January of 2020. That Complaint mimics the . . . Complaint filed against [the Sanitary Authority] . . . . In this Complaint, [Developer] again contends that it is entitled to reimbursement for tapping fees pursuant to [the Water Authority's resolution], which addresses definitions and specifically provides for "The Reimbursement Component of the Tapping Fee." Pursuant to this provision, [Developer] contends that it is entitled to 95% of the tapping fees in the development, leaving 5% to be deducted by the Authority as an administrative charge.

. . . .

The [Water Authority] has filed an Answer and New Matter, and in its Answer, the [Water Authority], like the [Sanitary Authority], denies liability for reimbursement and asserts that the tapping fee contains only a capacity part and a collection part. [The Water Authority] denies that [Developer] is entitled to any reimbursement under the rules and regulations of the [Water Authority], under the [Act], or the [Developer's A]greement. [The Water Authority] specifically asserts that the tapping fee charge contains no reimbursement part. It denies any obligation to notify [Developer] of tapping fees.

6

R.R. at 204a-06a. By order dated January 5, 2021, the trial court consolidated Developer's complaints against the Authorities. Supplemental Original Record (S.O.R.), Item No. 24.

After concluding discovery, the parties filed cross-motions for summary judgment. Relevant to this appeal, Developer asserted it was "entitled, as a matter of law, to reimbursement of 95% of all sewer tap fees paid to [the Sanitary Authority from the Project]" and 100% of "all water tap fees paid to the [Water Authority]." R.R. at 207a. The Authorities, in their motions for summary judgment, asserted their tapping fees were proper and that Developer was not entitled to any portion of the tapping fees because the fees do not contain a reimbursement part. *See id.* at 208a-10a. As a result, the Authorities requested dismissal of Developer's claims related to reimbursement for tapping fees.

**c.    Trial Court's November 9, 2021 Opinion and Order**

The trial court reviewed the parties' cross-motions for summary judgment, which contained materials produced in discovery, including expert reports, and heard oral argument on September 15, 2021. *Id.* at 203a-04a. Thereafter, the trial court issued a memorandum opinion and order, dated November 9, 2021, resolving the parties' summary judgment motions. The trial court determined the Sanitary Authority's tapping fees did not contain a reimbursement part, and the Sanitary Authority did not charge any excess tapping fees that could be considered a reimbursement part. *See id.* at 217a. Consequently, the trial court granted the Sanitary Authority's summary judgment motion and denied Developer's summary judgment motion regarding reimbursement for tapping fees. *Id.* at 218a.

With respect to the Water Authority, the trial court determined the Water Authority's tapping fees, like Sanitary Authority's, were below the maximum fees

7

allowed by law. *Id.* at 223a. Nevertheless, the trial court determined there were disputed issues of material fact regarding whether the Water Authority properly calculated and charged its tapping fees. Consequently, the trial court denied both the Water Authority's and Developer's summary judgment motions regarding reimbursement for tapping fees. *Id.* at 223a.

### d.     Subsequent Procedural History

The parties filed a second set of cross-motions for summary judgment to address additional outstanding issues before trial. *Id.* at 124a. The trial court denied these motions because it determined there were disputed issues of material fact. *See* Original Record (O.R.), Item No. 57. The trial court then conducted a non-jury trial to resolve the outstanding factual disputes. *See* Transcript of Testimony, 3/2/23 at 2, 5; Transcript of Testimony, 4/11/23 at 1, 4. After receiving testimony from the parties' experts, the trial court issued its July 19, 2023 order denying Developer's remaining claims. R.R. at 173a-74a. Developer appealed the trial court's July 19, 2023 order to this Court.

## II.     Issues

In this appeal, Developer's sole argument is that the trial court erred in its November 9, 2021 summary judgment order.[6] Specifically, Developer argues the trial court erred in determining it "was not entitled to reimbursement

---

[6]  Despite the trial court's order directing Developer to do so, Developer did not timely file a statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b). Because Developer raised arguments related to its inability to timely file a Rule 1925(b) Statement, this Court remanded this matter to the trial court for a determination as to whether Developer was entitled to *nunc pro tunc* relief. *See The Bluffs at Glade Path, L.P., v. Center Twp. Sanitary Auth.* (Pa. Cmwlth., No. 908 C.D. 2023, filed January 24, 2025); Black's Law Dictionary 1287 (11th ed. 2019) (*nunc pro tunc* is Latin for "now for then," and is defined as "[h]aving retroactive legal effect through a court's inherent power"). On remand, the trial court permitted Developer to file a Rule 1925(b) Statement *nunc pro tunc*.

from the [Sanitary Authority] and the [Water Authority] for tapping fees paid to each Authority by purchasers within the [Project[7]] under 53 Pa.C.S. § 5607(d)(24)(i)(C)(IV)." Developer's Br. at 30. Although Developer previously argued the Authorities' fees were improper, in this appeal, Developer has not presented any such argument. Instead, Developer asserts the trial court misinterpreted the Act and that a developer who constructs distribution or collection system components at its own expense is always entitled to reimbursement. *Id.* at 29.

### III.    Analysis

"Our standard of review on appeal from the grant or denial of summary judgment is de novo, and our scope of review is plenary." *Clean Air Council v. Sunoco Pipeline L.P.*, 185 A.3d 478, 485 (Pa. Cmwlth. 2018) (citation omitted). "In other words, we do not defer to the [trial court's] conclusions of law, and we reassess the record with a fresh pair of eyes." *Allegheny Cnty. Dep't of Health v. Wilkerson*, 329 A.3d 111, 117 (Pa. Cmwlth. 2024). Under our standard of review, "we may reverse a trial court's order only for an abuse of discretion or error of law." *Pentlong Corp. v. GLS Cap., Inc.*, 72 A.3d 818, 823 n.6 (Pa. Cmwlth. 2013) (citation omitted). In determining whether the trial court erred, we consider "[s]ummary judgment is only appropriate where, upon examination of the record in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is clearly entitled to a judgment as a matter of law." *Clean Air Council*, 185 A.3d at 485-86 (citation omitted).

---

[7]    Developer is not claiming entitlement to reimbursement for tapping fees paid by landowners *outside* the Project who connected to the sewer system Developer extended at Developer's sole expense. That situation, which is not at issue here, would be governed by a separate reimbursement provision in the Act. *See* 53 Pa.C.S. § 5607(d)(31).

9

Developer's arguments in this appeal all rely upon its interpretations of this Court's unreported memorandum opinion in *Southersby Development Corp. v. Borough of Jefferson Hills* (Pa. Cmwlth., No. 1756 C.D. 2010, filed April 5, 2011).[8] Specifically, Developer asserts *Southersby* "stands for the proposition that reimbursement of 95% of tap fees to the developer is required under the [Act]" and "that a developer is entitled to reimbursement any time it constructs infrastructure at its own cost that is then dedicated at nominal cost to the respective municipal authorities." Developer's Br. at 26, 29.

We disagree with Developer's interpretation of *Southersby*. In *Southersby*, the municipality charged tapping fees which exceeded the total permissible charges for its capacity part and collection part. *Southersby Dev. Corp.*, slip op. at 2-3. The municipality's ordinance did not identify a reimbursement part of its tapping fee. *Id.* Nevertheless, a panel of this Court determined the excess tapping fees[9] the municipality charged customers, which the municipality was not permitted to charge or retain, constituted a reimbursement part. *Id.* at 5-10. Therefore, we required the municipality to provide those excess tapping fees to the developer as reimbursement. *Id.* at 5-10.

---

[8]  Parties may cite unreported memorandum opinions of this Court issued after January 15, 2008, "for [their] persuasive value, but not as a binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

[9]  While the *Southersby* panel acknowledged recent amendments to the Act, it did not provide any specific analysis regarding the impact of the Act's amendments on the ability of a developer to receive reimbursement for the collection part. *Southersby Development Corp.*, slip op. at 5-10. Instead, the *Southersby* panel awarded the developer with the collection part of the tapping fee because the municipality conceded the collection part should be paid to the developer. *See id.* at 7 n.5, 9-10. Here, the Authorities have not made similar concessions. In addition, and as fully outlined below, the Act does not provide for Developer's receipt of the collection part of tapping fees. Therefore, we decline to follow *Southersby* to the extent it awarded the developer with the collection part of the municipality's tapping fees.

Here, the Authorities' resolutions establish tapping fees comprised of a capacity part and a distribution or collection part, but not a reimbursement part.[10]  In addition, Developer's Agreements with the Authorities do not contain provisions requiring reimbursement.  The Authorities collected only those tapping fees permitted under their respective resolutions, which were comprised entirely of the capacity and distribution or collection parts.  Thus, unlike *Southersby*, the Authorities did not charge excess tapping fees which this Court could categorize as a reimbursement part.

Additionally, the Act does not require a municipality's tapping fee to include a reimbursement part.  *See* 53 Pa.C.S. § 5607(d)(24)(i)(C) ("[a] tapping fee shall not exceed an amount based upon **some or all** of the following parts") (emphasis added).  Nor does the Act establish what can be included in the reimbursement part or how to calculate a reimbursement part.  *See* 53 Pa.C.S. § 5607(d)(24)(i)(C)(IV) ("The reimbursement part shall only be applicable to certain specific facilities when a fee required to be collected from such users will be reimbursed to the person at whose expense the facilities were constructed as set forth in a written agreement between the authority and such person at whose expense such facilities were constructed.").

In examining the Act's provisions regarding tapping fees to determine what might be includable in the reimbursement part, we note the Act treats the capacity, collection, and special purpose parts of the tapping fee separately from the

---

[10] The Sanitary Authority's resolution does not include any provisions for a reimbursement part of a tapping fee. *See* R.R. at 25a-67a.  Instead, it lists a tapping fee containing only a collection part and a capacity part. *Id.* at 67a.  Similarly, the Water Authority's resolution only identifies fees for a collection part and a distribution part. *See id.* at 107a.  The Water Authority's resolution does, however, contain specific provisions for a reimbursement part. *See id.* at 93a.  Nevertheless, those provisions only apply to subsequent connections (beyond a developer's land) and expressly require a reimbursement agreement, which Developer did not enter into with the Water Authority. *Id.*

reimbursement part. *See* 53 Pa.C.S. § 5607(d)(24)(i)(C). In addition, the Act's provisions give no indication that any other parts may be included in the reimbursement part. Instead, both the capacity part and the distribution or collection part explicitly provide they are generally for facilities that "provide existing service," not for facilities that would provide new service. *See* 53 Pa.C.S. § 5607(d)(24)(i)(C)(I), (II). This Court has explained the purpose of the capacity part and the distribution or collection part as follows:

> the tapping fee provisions of the [Act] . . . establish the guidelines and parameters a municipal authority must follow when calculating and recovering the **value** of its capital costs of providing the parts of the system required by the new user. The tapping fee provisions of the [Act] ensure a new customer does not pay **more per unit than** what it cost the municipal authority per unit to provide its capacity and collection related services. In other words, the Capacity and Collection parts of the new customer's tapping fee **per unit** cannot be more than what it has **cost** the authority **per unit** to provide these services required by the new customer.

*J. Buchanan Assocs., LLC v. Univ. Area Joint Auth.*, 231 A.3d 1089, 1102 (Pa. Cmwlth. 2020) (citing 53 Pa.C.S. § 5607(d)(24)(i)(C)(I)).

Given the purpose of the capacity part and the distribution or collection part of tapping fees, and the express statutory language of the Act, we conclude the capacity part and the distribution or collection part are designed to reimburse an authority for its existing infrastructure, not to reimburse other persons or entities for new collection and distribution facilities. As a result, we also conclude the reimbursement part of tapping fees under the Act cannot subsume the capacity part or the distribution or collection part.

## IV. Conclusion

For the reasons set forth above, we conclude the trial court did not abuse its discretion or commit an error of law in denying Developer's motions for summary judgment relating to reimbursement of tapping fees. Therefore, we affirm the trial court's order.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Bluffs at Glade Path, L.P.,          :
                          Appellant     :
                                        :
          v.                            :
                                        :
Center Township Sanitary Authority      :
                                        :
                                        :
The Bluffs at Glade Path, L.P.,          :
                          Appellant     :
                                        :
          v.                            :
                                        : No.  908 C.D. 2023
Center Township Water Authority         :


# O R D E R


    **AND NOW**, this 7th day of January 2026, the July 19, 2023 order of the Court of Common Pleas of Beaver County is **AFFIRMED**.


_____
STACY WALLACE, Judge